## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARL BELL,                                :
    Plaintiff,                           :
                                         :
v.                                        :           CIVIL ACTION NO. 23-CV-3646
                                         :
SELF INCORPORATED, *et al.*,              :
    Defendants.                          :

### MEMORANDUM

KENNEY, J.                                                        OCTOBER 24, 2023

Plaintiff Carl Bell initiated this civil action by filing a *pro se* Complaint on September 17, 2023.  (ECF No. 2.)  On September 25, 2023, Bell filed an Amended Complaint,[1] alleging that Defendants SELF Incorporated ("SELF") and the Station House Transitional Shelter ("Station House") "violated federal law on theft of moveable property" and obstructed court processes including his "right to a fair and speedy [trial]."  (ECF No. 4.)  The Court previously granted Bell *in forma pauperis* status and dismissed his claims without prejudice for failure to state a claim.  Bell has since returned with a Second Amended Complaint.  (ECF No. 7.)  For the following reasons, the Court will dismiss his Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) without further leave to amend.

---

[1]  An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading.  *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted); *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (holding that "liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings").

**I.    FACTUAL ALLEGATIONS**[2]

   In his Amended Complaint, Bell sought to invoke federal question jurisdiction against

Defendants SELF and Station House.  (Am. Compl. at 3.)[3]  Bell averred that, on the morning of

August 21, 2023, he was denied access to Station House, despite being a resident of the shelter

and despite having made prior special arrangements with Mr. Andrae, a case worker, so that he

could leave the shelter before 6:00 a.m.  (*Id*. at 4.)  When Bell attempted to reenter Station House

at 7:00 a.m., he was allegedly denied access by front desk staff member, Mrs. Johnson, who

advised him that he was in violation of the standard curfew policy.  (*Id.*)  Bell averred that he

was required to attend a court hearing at 8:00 a.m. on August 21, and his "[f]ailure to attend this

hearing could have resulted in jail, prision [sic], and bail being set which [he] would be unable to

afford."  (*Id.*)  Although Bell allegedly explained this situation to Johnson and expressed his

need to enter the facility so that he could obtain his laptop, clothing, and legal documents for the

hearing, Johnson nevertheless refused entry, telling Bell to "talk to [his] case worker at 9 am."

(*Id.*)  Bell went to the local police precinct to file a criminal complaint against Johnson.  (*Id.*)

Bell asserted that his public defender "was able to fast track the complaint" and obtain a

continuance of the hearing, thereby "avoiding the bench warrant and any other complications."

(*Id.*)

   Bell asserted that he was again denied access to Station House on the afternoon of August

31, 2023 by Johnson, Andrae, and the program director.  (*Id.*)  These individuals also allegedly

refused to return Bell's belongings.  (*Id.*)  Bell also averred that Johnson "attempted to incite

---

[2]  The factual allegations are taken from Bell's Amended Complaint and Second Amended
Complaint.

[3]  The Court adopts the pagination assigned to the Amended Complaint and Second Amended
Complaint by the CM/ECF docketing system.

residents to attack [him]," causing him to "involve the authorities." (*Id.*)  The local police arrived at approximately 1:00 p.m. "to force Station House and its staff to return [Bell's] belongings.  (*Id.*)  After the police left the property, the Station House security staff "negligently threw [Bell's] things into plastic trash bags, which were dropped at [his] feet." (*Id.*)  Bell contended that "[m]any of his items were missing and unaccounted for," including jeans, sneakers, t-shirts, sweatshirts, a phone and charger, a wallet, identification, and credit cards.  (*Id.* at 4-5.)  Bell also averred that fraudulent charges appeared on the missing credit cards.  (*Id.* at 5.)

Bell contended that Defendants "violated federal law on theft of moveable property, obstruct[ed] court proccesses [sic] including [his] right to a fair and speedy trail [sic], as well as caused undue hardship amounting to harassment."  (*Id.* at 3.)  Bell alleged that he was subjected to "verbal and physical intimidation" and lost his "ability to habitate in any other shelter within the City of Philadelphia causing [him] to have to live literally on the streets."  (*Id.* at 5.)  Bell also asserted that the "[m]issed court date resulted in continuance further hindering [his] ability to resume [his] small business activities" resulting in a "loss of wages and personal reputation." (*Id.* at 3, 5.)  Bell alleged that he lost his "peace of mind, sense of safety, sense of security and trust in [the] city of Philadelphia and its shelter system," and he sought monetary damages in the amount of $12,000.  (*Id.* at 5.)

In an October 2, 2023 Memorandum and Order, the Court granted Bell leave to proceed *in forma pauperis* and dismissed his Amended Complaint.  *See Bell v. SELF Inc.*, No. 23-3646, 2023 WL 6396069, at *1 (E.D. Pa. Oct. 2, 2023).  The Court dismissed any civil rights claims Bell intended to raise pursuant to 42 U.S.C. § 1983, because Bell failed to allege facts demonstrating that either of the Defendants were state actors who could be held liable under § 1983.  (*Id.* at *4.)  Also, to the extent Bell sought to pursue any state law claims, any such claims

were dismissed because Bell failed to meet his burden to demonstrate subject matter jurisdiction. (*Id*. at 5.)  Specifically, Bell's assertions that he and the Defendants were citizens of Pennsylvania, and his allegations as to the amount of damages sought, were not sufficient to establish diversity jurisdiction over any state law claims.  (*Id*.)  Considering Bell's *pro se* status, the Court permitted him an opportunity to file an amended complaint to the extent he would be able to cure the defects noted as to his federal claims.  (*Id*.)

In his Second Amended Complaint, Bell has renamed SELF and Station House as Defendants.  (Sec. Am. Compl. (ECF No. 7).)  In fact, the allegations in the Second Amended Complaint are virtually identical to the Amended Complaint with the exception of the following additional paragraph:

> Station House Transitional Shelter is funded by Philadelphia's Office of Homeless Services which is in turn fundeed [sic] by the federal Office of Housing and Urban Development. Given that Station House and Self Inc have an interdependence on government agencies for funding and operations they are for all intents and purposes state actors. Therefore, they are open to questions of violations of civil rights.  The unusal [sic] amounts of harassments, depriviatioon [sic] of movement, both the theft of property and refusal to return, lack of transparent policy, unwarranted seizure and search of person[al] belongings, and interfernec [sic] of right to a fair and speedy trial, should all in [Bell's] opinion be questioned under the lens of this organization and its employees acting as state actors.

(*Id.* at 4.)

## II.    STANDARD OF REVIEW

Since Bell is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Second Amended Complaint if it fails to state a claim.  The Court must determine whether the Second Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept

the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. The Court construes the allegations of the Second Amended Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "'cannot flout procedural rules - they must abide by the same rules that apply to all other litigants.'" *Id.*

## III.   DISCUSSION

As with his prior pleading, Bell seeks to invoke the Court's federal question jurisdiction, this time asserting additional factual allegations in an attempt to establish that SELF and Station House are state actors subject to liability under § 1983.[4] (*See* Sec. Am. Compl. at 3-4.) Considering that his allegations are virtually identical to his prior complaint, the Court will again liberally construe Bell's references to "theft of property" and "obstructing court processes" as attempts to assert due process claims under the Fourteenth Amendment.[5] Bell may also be

---

[4] Bell does not appear to assert any state law claims in the Second Amended Complaint. He checked only the box on the form to indicate that he sought to invoke federal question jurisdiction for his claims. (Sec. Am. Compl. at 3.) Even assuming Bell intended to assert state law tort claims, any such claims would be dismissed for lack of diversity subject matter jurisdiction for the same reasons set forth in the Court's prior Memorandum, namely that Bell has failed to allege the citizenship of the parties and the amount in controversy does not exceed $75,000. *See Bell*, 2023 WL 6396069, at *5.

[5] As in his prior pleading, Bell again makes passing references to harassment and intimidation. To the extent that Bell intended to assert claims for harassment or intimidation, he has again provided no facts to support plausible claims for relief. *See Iqbal*, 556 U.S. at 678; *see also Campbell v. LVNV Funding, LLC*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (explaining that "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other" (citing

attempting to reassert a First Amendment access to the courts claim since he contends that the Defendants' actions interfered with his ability to attend a court hearing.  As set forth below, even considering Bell's additional factual allegations, any constitutional claims cannot proceed because the named Defendants – a private non-profit organization and its emergency housing site – are not state actors subject to suit under § 1983.

As noted in the Court's prior Memorandum, the vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."  *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).

Whether a private entity is acting under color of state law – *i.e.*, whether the defendant is a state actor subject to liability under § 1983 – depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  " To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:  (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the

---

*Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

In his Second Amended Complaint, Bell alleges that Station House is funded by Philadelphia's Office of Homeless Services which receives its funding from the United States Department of Housing and Urban Development. (Sec. Am. Compl. at 4.) Bell asserts that because Station House and SELF "have an interdependence on government agencies for funding and operations they are for all intents and purposes state actors." (*Id.*)

As with his prior pleading, Bell has not included any facts about Defendants SELF or Station House's specific involvement in his alleged constitutional harm aside from employing Johnson, Andrae, and the program director. (*Id.*) The Court previously noted that SELF appears to be a nonprofit agency that provides emergency and permanent supportive housing, housing-focused case management, and mentoring for Philadelphia's most vulnerable communities. *See* SELF INC., https://selfincorp.org/about/ (last visited October 17, 2023). Moreover, it appears that Station House is one of SELF's emergency housing sites, which provides housing for single male adults who are experiencing homelessness. *See* SELF's Emergency Housing Sites, https://selfincorp.org/programs-services/ (last visited October 17, 2023).

Bell's allegation that SELF and Station House receive state or federal funding does not render them state actors. State action is not established merely because a private individual or entity receives government funding or is subject to extensive government regulation. *See, e.g.*, *San Francisco Arts & Athletics, Inc. v. U. S. Olympic Comm.*, 483 U.S. 522, 542-47 (1987); *Blum v. Yaretsky*, 457 U.S. 991, 1003-11 (1982) (rejecting argument that nursing homes were

state actors in light of "state subsidization of the operating and capital costs of the facilities, payment of the medical expenses of more than 90% of the patients in the facilities, and the licensing of the facilities by the State").  "[T]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors."  *See Joseph v. Row Hotel*, No. 21-1691, 2021 WL 2400948, at *3-4 (E.D.N.Y. June 11, 2021) (quoting *Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter*, No. 18-5995, 2020 WL 1043305, at *4 (E.D.N.Y. Mar. 4, 2020) (dismissing on statutory screening Section 1983 claims against a private organization providing housing to the homeless under contract with New York City because the plaintiff failed to allege "that this private organization is performing a public function sufficient to turn the shelter or its employees into state actors for purposes of § 1983 liability"); *see also Schutt v. Melmark, Inc.*, 186 F. Supp. 3d 366, 376 (E.D. Pa. 2016) (concluding that a residential treatment center was not a state actor despite receipt of state funding); *Chance v. Reed*, 538 F. Supp. 2d 500, 507 (D. Conn. 2008) (mere fact that Operation Hope, a nonprofit organization that provides emergency shelter and services to the homeless, receives federal and state funding and is organized as a § 501(c)(3) nonprofit organization under the Internal Revenue Code, does not make it a state actor); *Klavan v. Crozer-Chester Med. Ctr.*, 60 F.Supp.2d 436, 443 (E.D. Pa. 1999) ("[D]efendants' receipt of government funding, even if combined with [extensive regulation], does not render defendants state actors, regardless of which test we employ.").

Bell has not alleged any facts to suggest that either SELF or Station House exercise powers that are traditionally attributed to the state.  Nor has he alleged sufficient facts to support a plausible inference that either of them is a state actor.  *See, e.g., Gray v. Zook*, No. 20-1366, 2020 WL 13729665, at *5 (M.D. Pa. Sept. 17, 2020) (dismissing claim against non-profit agency

that provides services to domestic violence victims where the plaintiff alleged no facts to suggest that it was a state actor); *Johnson v. Bridge*, No. 14-884, 2014 WL 2711795, at *1 (E.D. Mo. June 16, 2014) (dismissing § 1983 claims against non-profit organization where the plaintiff alleged only that the non-profit receives state funds).  Moreover, as noted in the Court's prior Memorandum, several district courts analyzing § 1983 claims against privately run social services entities, such as a homeless shelter, or its operators, directors, and employees, have concluded that they are not state actors.  *See, e.g.*, *Brown v. Res. for Hum. Dev.*, No. 21-1735, 2021 WL 2400616, at *5 (E.D. Pa. June 11, 2021) (citing *Witt v. Johnson*, No. 21-11, 2021 WL 1321316, at *1–2 (W.D. Va. Apr. 8, 2021) (concluding that plaintiff's section 1983 claims against The Haven and two of its employees – where employees denied plaintiff access to day shelter for homeless individuals and physically assaulted him – could not proceed because defendants were private nonprofit organization and its employees, not state actors); *Al-Qadaffi v. Acacia Network*, No. 16-5423, 2016 WL 6072374, at *3 (E.D.N.Y. Oct. 17, 2016) (dismissing plaintiff's section 1983 claims where there was "no indication that the [men's] shelter, its operator, or its director [were] state actors or that they otherwise acted 'under color of state law' when they caused the alleged harm" by allegedly failing to provide halal meals); *Hill v. Nolan*, No. 15-648, 2015 WL 9286757, at *2 (S.D. Ohio Oct. 8, 2015) (recommending dismissal of complaint against homeless shelter and several employees that had required plaintiff to leave facility and stay elsewhere when "there [were] no facts whatsoever alleged in Plaintiff's complaint" that would indicate shelter was acting under color of state law, particularly where the shelter was a single, private-individual founded shelter, the state of Ohio did not operate shelter, and the shelter was not a state agency), *report and recommendation adopted*, 2015 WL 9269756 (S.D. Ohio Dec. 21, 2015).  Accordingly, the § 1983 claims against SELF and Station House will

be dismissed pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.[6]

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Bell's Second Amended Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Since Bell was already given an opportunity to amend the defects in his federal claims and was unable to do so, the Court concludes that further attempts to amend would be futile.  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").  An appropriate Order follows, which dismisses this case.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, J.**

---

[6] Even if Bell sufficiently pled state action with respect to SELF or Station House, although he has not, the claims against the non-profit organizations would nevertheless be dismissed.  Non-profit organizations, like municipalities, will not be liable under § 1983 for the acts of its employees under a theory of *respondeat superior*.  Non-profit organizations can only be liable under § 1983 when an official policy or custom of the non-profit organization causes the deprivation of constitutional rights.  *See Kirby v. Visionquest Nat'l, Ltd.*, No. 15-6208, 2016 WL 1623439, at *3 (E.D. Pa. Apr. 25, 2016) (applying standard for municipal liability from *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978), to § 1983 claims asserted against a non-profit organization).  Bell alleges no facts suggesting that his alleged constitutional harms were caused by a SELF or Station House policy or custom.

10